1   ARTURO J. GONZALEZ (CA SBN 121490)
    JENNIFER LEE TAYLOR (CA SBN 161368)
2   MORRISON & FOERSTER LLP
    425 Market Street
3   San Francisco, California  94105-2482
    Telephone: 415.268.7000
4   Facsimile: 415.268.7522
    AGonzalez@mofo.com; JTaylor@mofo.com
5
6   SCOTT C. MOORE (CA SBN 203181)
    JOHN METZIDIS (CA SBN 259464)
7   MORRISON & FOERSTER LLP
    555 West Fifth Street, Suite 3500
8   Los Angeles, California  90013
    Telephone: 213.892.5200
9   Facsimile: 213.892.5454
    SMoore@mofo.com; JMetzidis@mofo.com
10
    Attorneys for Defendant/Counterclaimant
11  NUVASIVE, INC.

12

13                  UNITED STATES DISTRICT COURT

14                 CENTRAL DISTRICT OF CALIFORNIA

15                       WESTERN DIVISION

16

17  NEUROVISION MEDICAL                 Case No. 2:09-cv-6988 R (JEMx)
    PRODUCTS, INC.,
18                                       **NUVASIVE'S OPPOSITION TO
                                         PLAINTIFF'S MOTION IN
19              Plaintiff,               LIMINE NO. 2 (EXCLUSION OF
                                         ROBERT WALLACE)**
20        v.
                                         Hrg:      September 20, 2010
21  NUVASIVE, INC., and DOES 1 through   Time:     10:00 a.m.
    10, inclusive                        Ctrm:     8
22
                Defendants.              Trial:    September 21, 2010
23
                                         Honorable Manuel L. Real
24

25  AND RELATED COUNTERCLAIMS

26

27

28

## I.      INTRODUCTION

Contrary to NMP's arguments, it is well-established that expert opinion on "costs and deductions" under the Lanham Act's damages provision — the testimony that NMP seeks to exclude through this motion — is rebuttal opinion, and is thus the proper subject of a *rebuttal* expert report.  NuVasive's damages expert, Robert Wallace, disclosed these opinions in his *rebuttal* expert report; accordingly, they were timely disclosed.  Plaintiff cites no cases holding otherwise. In fact, Plaintiff ignores cases that address this issue directly, all of which contradict NMP's position.  The proposed testimony on "costs and deductions" is so clearly rebuttal testimony that if the Court grants NuVasive's motion to preclude Plaintiff's damages expert from testifying at trial (*see* Dkt. # 64), then NuVasive's damages expert's testimony on "costs and deductions" will be unnecessary.

Wallace is also thoroughly qualified to provide expert testimony on the apportionment of NuVasive's profits due to allegedly infringing uses of the NEUROVISION mark.  Apportionment of profits — just like the determination of sales, costs, and deductions — is inherently a calculation of economic damages, and Wallace's 35 years of experience as a certified public accountant leave him amply qualified to offer such opinions before the jury.  Plaintiff cites no cases holding that marketing experience in the field where the goods at issue are sold is a requirement for opining on apportionment, and in fact, Plaintiff's own experts themselves have no marketing experience in the field where the goods at issue are sold.

Finally, Wallace relied upon standard accounting methods to perform a quantitative analysis of the importance that the NEUROVISION mark played in generating profits for NuVasive (extremely little, if any).  The accounting data he considered in his report — which Plaintiff deliberately chooses to ignore — show that he did not pull his apportionment number "out of thin air," as claimed by Plaintiff.

For these reasons, NuVasive respectfully requests that the Court deny Plaintiff's motion in limine to preclude Robert Wallace from testifying at trial.

## II.   ARGUMENT

### A.   Expert Opinion on "Costs and Deductions" Under Section 35 of the Lanham Act Is Proper Rebuttal Opinion

NuVasive agrees that under Section 35 of the Lanham Act, Plaintiff bears the burden of proving "defendant's sales only," and that once Plaintiff does so, the burden shifts to NuVasive to prove "all elements of cost or deduction claimed." 15 U.S.C. § 1117(a); *Cyclone USA, Inc. v. LL&C Dealer Servs., LLC*, 2010 U.S. Dist. LEXIS 51172, *4-5 (C.D. Cal. May 24, 2010).

The parties' agreement ends there, however, because, contrary to Plaintiff's argument, courts have explicitly held a defendant's evidence as to costs or deductions claimed is proper matter for a *rebuttal* expert report, and should not be required to be included in an initial report.  A recent opinion from the Southern District of New York expressly rejected exactly the same timeliness argument that Plaintiff is now making:

> NEC argues that the rest of the Bratic Report should be excluded because it was untimely.  Specifically, it asserts that Ampad had the burden of proof for claiming any costs or deductions and thus Ampad should have submitted its expert report by April 20, 2009, the date upon which expert reports were due.  Ampad instead submitted its report on May 26, 2009, the deadline for rebuttal expert reports. ***Ampad was correct in submitting its report as a rebuttal because the burden shifts to the Defendant once the Plaintiff has proven the amount of infringing sales.***  Bratic's report was a timely and proper rebuttal to NEC's expert damages report.  NEC's timeliness argument fails and the motion to deny the remaining portions of the Bratic Report is DENIED.

1   *Nat'l Envelope Corp. v. Am. Pad & Paper Co. of Del., Inc.*, 2009 U.S. Dist. LEXIS

2   121308, *27-28 (S.D.N.Y. Dec. 22, 2009) (emphasis added; citations omitted).[1]

3       *National Envelope*'s holding is well-founded.  If a trademark defendant's

4   damages expert is to opine on how much the defendant's sales should be offset for

5   costs and deductions, he cannot do so until he knows precisely which sales the

6   plaintiff's expert includes in his damages calculation.  For example, in this case

7   Plaintiff's damages expert has opined as an "alternative" damages theory (in what

8   he calls "unjust enrichment") that the relevant sales are all of NuVasive's sales

9   from 2001 to 2009 from the MAS® surgical platform — a collection of at least *six*

10  products, only one of which is sold under the NEUROVISION® mark.[2]

11      In addition to the reasoning of *National Envelope* — which makes it clear

12  that the offset for costs and deductions should always be addressed in rebuttal

13  expert reports — Plaintiff's own tactics in this case made it impossible for

14  NuVasive's damages expert to address costs and deductions in his opening expert

15  report.  Specifically, Plaintiff outright *refused* to provide NuVasive with any

16  information on the scope of its damages claim prior to the deadline for expert

17  disclosures.  For example, in response to an interrogatory where NuVasive

18  requested "a complete description of the damages and monetary relief" that Plaintiff

19  sought in this case, Plaintiff stated:

20          [Plaintiff] seeks from NuVasive actual damages, wrongful profits,

21          attorneys' fees and costs, treble damages under the Lanham Act and

22

23  [1] Neither of the two cases cited by Plaintiff addresses expert opinions on costs and
    deductions under trademark law.  Instead, both involve patent invalidity opinions

24  and are inapposite.  *See Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 2005 U.S.
    Dist. LEXIS 10692 (N.D. Ill. Feb. 22, 2005); *STS Software Systems, Ltd. v. Witness*

25  *Systems, Inc.*, 2008 U.S. Dist. LEXIS 17677 (N.D. Ga. Mar. 6, 2008).

26  [2] NuVasive's damages expert also opines in rebuttal — correctly so — that the
    appropriate sales base should include only those products actually sold under the

27  NEUROVISION® mark, and not all products in the entire MAS® surgical
    platform.

28

1   punitive damages.  *The amount of each category of damage will be*

2   *the subject of an expert report, which has not yet been formulated.*

3   (Pl.'s Resp. to Interrogatory No. 12 (emphasis added), Moore Decl., Exh. E [filed

4   concurrently herewith].)  Moreover, despite meeting and conferring on this issue,

5   Plaintiff never supplemented its response.  (Moore Decl. ¶ 14.)  Having refused to

6   inform NuVasive of the amounts of sales that it believed formed the basis for its

7   claim of "wrongful profits," Plaintiff cannot now cry foul because NuVasive's

8   expert did not address that claim in his opening expert report.

9   Thus, Plaintiff's timeliness argument as to Wallace's rebuttal report is

10   without merit.

11   **B.    Wallace's Opinions Regarding Apportionment Are Admissible**
          **Under Rule 702 and *Daubert***

12

13   **1.    Wallace Is Thoroughly Qualified to Offer Expert Opinion**
           **Regarding Apportionment**

14   Expert testimony regarding apportionment of profit — just like testimony

15   regarding sales, costs, and deductions — is fundamentally testimony about the

16   extent of economic damages.  It is fully appropriate to rely on the testimony of an

17   accountant for testimony about a component of economic damages.  Courts have

18   consistently relied upon the expert testimony of accountants for evaluations of

19   damages in trademark cases, even over objections that the accountants were

20   "unfamiliar" with the nature of the industry in which the mark was used.  *See, e.g.*,

21   *Main Street Mortgage, Inc. v. Main Street Bancorp, Inc.*, 158 F. Supp. 2d 510, 513

22   (E.D. Pa. 2001) ("Biddick is not testifying as a trademark expert . . . .  He is being

23   offered to *quantify* the decline.  Biddick's proposed testimony concerns the area of

24   damages, and we find that his background as a CPA and experience in analyzing

25   financial data are sufficient to qualify him to testify on lost profits.").  Even

26   Plaintiff's own cases agree that "someone with demonstrated experience in

27   valuation is the proper expert on the issue of apportionment."  *See Ty Inc. v.*

28

*Publ'ns Int'l, Ltd.*, 2004 U.S. Dist. LEXIS 12037, *8 (N.D. Ill. July 1, 2004) (internal citations omitted).

Wallace has over 35 years of experience as a certified public accountant.  He earned a master of science in accounting from the University of Pennsylvania's Wharton Graduate School, and is a member of the California Society of Certified Public Accountants, the American Institute of Certified Public Accountants ("AICPA"), and the Institute of Business Appraisers.  (Wallace CV [Wesley Decl. Exh. 6 at App. A].)  There simply can be no question that he is eminently qualified to testify to all components of economic damages in a trademark action, including apportionment.

The three cases Plaintiff cites, *Sygma Photo News, Inc. v. High Society Magazine, Inc.*, 778 F.2d 89 (2d Cir. 1985), *Dalen Prods., Inc. v. Harbor Freight Tools, USA*, 2010 U.S. Dist. LEXIS 79836, (E.D. Tenn. Aug. 5, 2010), and *Ty Inc. v. Publ'ns Int'l, Ltd.*, 2004 U.S. Dist. LEXIS 12037 (N.D. Ill. July 1, 2004),[3] do not hold that experience in marketing or sales is a *requirement* for offering expert testimony on apportionment.  These cases only speak of such experience as *sufficient* to qualify an expert to offer such testimony.  Indeed, Plaintiff has not cited even one case where a court precluded an expert from opining on apportionment because he or she was "merely" an accountant and did not have sales or marketing experience.

Providing valuation of businesses and subsets of businesses is precisely the area of Wallace's expertise, and his extensive background in accounting makes him fully qualified to opine on all elements of Plaintiff's alleged damages, including apportionment of profits.

---

[3] A fourth case Plaintiff cites, *Truck Equipment Service Co. v. Freuhauf Corp.*, 536 F.2d 1210 (8th Cir. 1976), does not even address the qualification of experts to testify regarding apportionment.

### 2.    Wallace's Proposed Testimony Regarding Apportionment Is Based Upon Reliable Principles and Methods

Wallace's methodology of estimating the percentage of NuVasive's profits that should be apportioned to the alleged infringement was to compare accounting data from NuVasive and Plaintiff across multiple parameters:  the parties' cumulative sales, the parties' cumulative sales and marketing expenses, and the parties' cumulative research and development costs.  (Wallace Rebuttal at p. 13-14 [Wesley Decl. Exh. 6].)  Wallace also relied on Plaintiff's sales and operating expenses prior to 2002 to evaluate the strength of brand recognition generated by the term NEUROVISION prior to NuVasive's use of the mark.  (*Id.*)

In this way, Wallace relied upon standard accounting methods to "perform a *quantitative evaluation* of the importance of NMP's claimed NEUROVISION Marks to generating sales and profits of NuVasive's NeuroVision product line compared to all of the efforts and expenditures of NuVasive."  (*Id.* at p. 4, emphasis added.)  That this methodology does not apply neatly to the factors of peer review or publication is of no moment because it is supported by widely accepted accounting practice.  *Cf. Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 809 (3d Cir. 1997) (holding that lack of peer review or publication was not dispositive where the expert's opinion was supported by "widely accepted scientific knowledge").

Plaintiff's assertion that Wallace did not evaluate the measure of importance consumers would attach to the NEUROVISION mark misapprehends the nature of Wallace's methodology.  Wallace's methodology addresses this very issue because it is a qualitative analysis showing that consumers actually would *not* attach much value NuVasive's use of the word NEUROVISION.  As he states in his rebuttal report, "[t]he insignificant activity of NMP/RLN prior to 2002 and the comparison of the operations of NuVasive and NMP from 2002 to 2009 indicate that NuVasive's ability to generate its NeuroVision revenues is due ***all or substantially***

1  ***all to factors other than*** use of the NEUROVISION marks." (Wallace Rebuttal

2  Report at p. 15 [Wesley Decl. Exh. 6]; emphasis added.)

3      Because of the striking differences between NuVasive and Plaintiff in terms

4  of sales, expenses, and R&D costs, there is substantial evidence to support

5  Wallace's conclusion that NuVasive's revenues were due "all or substantially all to

6  factors other than use of the NEUROVISION mark." This is just another way of

7  saying that the percentage of NuVasive's NeuroVision profits attributable to its

8  allegedly infringing use of the mark is ***zero*** or ***de minimis***. Wallace thus provides

9  ample support for his conclusion that apportionment is no greater than two percent.

10  The number was not "pulled out of thin air," as Plaintiff claims.

11  **III.    CONCLUSION**

12      For the reasons set forth herein, NuVasive respectfully requests that the

13  Court deny Plaintiff's Motion in Limine No. 2.

14  Dated:    August 30, 2010          ARTURO J. GONZALEZ
                                        JENNIFER LEE TAYLOR
15                                      SCOTT C. MOORE
                                        JOHN METZIDIS
16                                      MORRISON & FOERSTER LLP

17                                      By:  /s/ John Metzidis
18                                           John Metzidis

19                                      Attorneys for
                                        Defendant/Counterclaimant
20                                      NUVASIVE, INC.

21  la-1088861

7